UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19 CR 68 AGF (ACL) |
| | ) |
| ALONZO JONES, | ) |
| | ) |
| Defendant. | ) |

### AMENDED REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Pending before the undersigned is Defendant Alonzo Jones' Motion to Suppress Evidence and Statements Obtained as a Result of Search or Seizure. (Doc. 24.) Jones argues that the informant whose information provided the probable cause for issuance of a Search Warrant for his home was not reliable. Consequently, Jones claims that the Application and Affidavits that supported the issuance of the Search Warrant were not supported by probable cause. He requests suppression of the evidence seized pursuant to the Search Warrant, as well as the statements he made at his residence and later at the police station.

The Government opposed the Motion by arguing that the Search Warrant was supported by probable cause and Jones made statements after being advised of the *Miranda* warning. (Doc. 62 at 7.)

Three law enforcement officers testified at the evidentiary hearing. The Search Warrant packet that has been challenged was submitted as Government Exhibit #1. Both parties submitted post-hearing memoranda. (Docs. 37, 38.)

In consideration of the evidence and legal arguments submitted by the parties, the undersigned recommends that the following findings of fact and conclusions of law be adopted, and that the Motion to Suppress be denied.

## I.  Findings of Fact

On February 13, 2019, Missouri State Highway Patrol Trooper Trent Beeson stopped a man, Chucky Moody, for a license plate violation.  As a result of the stop, Trooper Beeson discovered that Moody was in possession of a distributable quantity of methamphetamine.  Moody was arrested, given the *Miranda* warning, and transported to the Pemiscot County Jail.  Moody advised Trooper Beeson that he had information concerning the location of a large quantity of methamphetamine and he was willing to cooperate with law enforcement.  Southeast Missouri Drug Task Force Officers (TFOs) Pam Buchanan and Mark McClendon were contacted and interviewed Moody.

The TFOs prepared a search warrant packet based on Moody's information.  Moody indicated he received the methamphetamine from Alonzo Jones, who he'd known for nine months and from whom he'd regularly acquired methamphetamine during the prior three months.  Moody also stated that he was present when another individual, who he identified by name, purchased seven grams of methamphetamine from Jones earlier that evening.

TFO McClendon drafted a Supplemental Affidavit for Moody that summarized Moody's interview statement.  Moody's Affidavit noted that he had been a regular user of methamphetamine for ten years.  That experience enabled Moody to be familiar with the appearance of methamphetamine and the weights associated with distribution of the drug.  Moody knew the location of Jones' residence and described it in detail.  His description was aided by reference to a map that was accessed on the internet by the investigating officers.

Page **2** of **16**

Moody explained that he had purchased methamphetamine from Jones on at least 30 occasions and received methamphetamine from Jones multiple times in exchange for performing mechanic work.

In addition, Moody stated that while at Jones' residence located at 112 Ponderosa Drive, Steele, Missouri, that same night, Jones shared that he had gotten money from the bank to purchase seven ounces of methamphetamine.  Jones further complained about the quality of the methamphetamine.  Moody described various locations in and around Jones' residence and a neighboring property where he knew Jones hid methamphetamine in the past.  He also shared that Jones was known to keep marijuana in a cigar box and that Jones used an air freshener canister with a screw lid to store methamphetamine.

TFO McClendon, the supervisory officer for the Drug Task Force, believed that Moody's statement rang true and it was not "a story that he was fabricating on the fly."  (Tr. 52.)

The following morning, TFO Buchanan prepared a Supplemental Affidavit to be attached to the Search Warrant Application.  She repeated much of the information provided by Moody during the interview.  TFO Buchanan also noted that before the interview, Trooper Beeson found Moody to be in possession of methamphetamine after conducting a traffic stop and Moody admitted that he acquired the substance from Jones.

During the evidentiary hearing, TFO Buchanan testified that her Affidavit did not include everything she knew about Moody.  In particular, the fact that Moody had acted as a confidential informant in the past and that she believed Moody's statement about Jones was reliable.  TFO Buchanan could not recall whether Moody was on probation at the time of his cooperation.  She noted that he had previously shared information related to a stolen property

Page **3** of **16**

investigation. TFO Buchanan explained that she was contacted around 11 p.m., February 13, and asked to interview Moody. She went to the police station, conducted the interview, returned home around 2 a.m., and was back in the office by 8 a.m., to work on her Affidavit.

At 10:10 a.m., the Pemiscot County Prosecutor reviewed the search warrant packet before it was presented to Circuit Judge Carter, who signed the Search Warrant in the presence of TFO Buchanan. Shortly thereafter, surveillance of Jones' residence was conducted. When officers confirmed Jones was home, the Search Warrant was executed. Jones was in the residence along with four other individuals.

When the officers entered, Jones immediately exclaimed, "It's all mine, it's all mine, it's all mine." He was instructed to lie down on the floor. Jones followed the officers' directives. Methamphetamine was found on the floor by him, on the table in the kitchen, and in an air freshener container as described by Moody. Jones was advised of his *Miranda* rights and transported to the jail where he later made additional incriminating statements.

## II.  Conclusions of Law

The foundation of Jones' request for suppression is that the Search Warrant was not supported by probable cause because Moody was not identified as a reliable informant. Jones argues that the totality of the circumstances (*i.e*., Moody's behavior and statements) support that Moody was an unreliable informant. He further claims that TFO Buchanan's failure to include her belief that Moody was a reliable informant in the affidavit was reckless, and the issuing judge's failure to inquire about Moody's reliability was at best neglectful and at worst reckless. Jones' arguments fail for the reasons set out below.

**II.A.         The search warrant was supported by probable cause.**

"The sufficiency of a search warrant is in the first instance determined on the basis of the information before the issuing judicial officer." *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986) (citations omitted). On a motion to suppress, a district court should not make a de novo determination of probable cause; rather, the decision to issue the warrant is to be upheld if supported by substantial evidence in the record. *Id.* (citing *Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam).

Probable cause to issue a warrant exists when an affidavit sets forth sufficient facts to justify a prudent person in the belief that contraband will be found in a particular place. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Whether probable cause has been established involves the practical commonsense evaluation of the totality of the circumstances. *Gates*, 462 U.S. at 238.

The quantum of evidence needed to meet this probable cause standard has been addressed by the Supreme Court on numerous occasions:

> In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.

*Brinegar v. United States*, 338 U.S. 160, 175 (1979).

Probable cause is a "fluid concept turning on the assessment of probabilities in particular factual contexts--not readily or even usefully reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Further, probable cause in an affidavit "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in

the field of law enforcement." *Id.* at 632.  All that need be shown for probable cause to search is that there is a "fair probability" that contraband or evidence of a crime will be found at the premises to be searched.  *Gates, supra*.  Also, affidavits should not be read in a hypertechnical manner.  *See United States v. Ventresca*, 380 U.S. 102, 109 (1965).

Probable cause may be found in hearsay statements from reliable persons, *Gates*, 462 U.S. at 245; in hearsay statements from confidential informants corroborated by independent investigation, *Draper v. United States*, 358 U.S. 307, 313 (1959); or in observations made by trained law enforcement officers, *McDonald v. United States*, 335 U.S. 451, 454 (1948).  While these are some of the ways in which probable cause is commonly established, they are by no means all-inclusive.  Information contained in applications and affidavits for search warrants must be examined in the totality of the circumstances presented.  *Gates*, 462 U.S. at 230.  "'The preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination' as to whether an affidavit establishes probable cause." *United States v. Leon*, 468 U.S. 897, 914 (1984).

When an "affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005), citing *United States v. LaMorie*, 100 F.3d 547, 553 (8th Cir. 1996).  The Supreme Court explained "that an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report." *Gates*, 462 U.S. at 230.  The Court did not conclude "that these elements should be understood as

entirely separate and independent requirements to be rigidly exacted in every case,…"

*Gates*, 462 U.S. at 230.  The Court recognized that:

> [i]nformants' tips doubtless come in many shapes and sizes from many different types of persons.  As we said in *Adams v. Williams*, 407 U.S. 143, 147,…(1972):  "Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability."  Rigid legal rules are ill-suited to an arena of such diversity.  "One simple rule will not cover every situation."  *Ibid*.[ ]

*Id.* at 232.

The Supreme Court elucidated that an informant's reliability and veracity, as well as their basis of knowledge "are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."  *Id*. at 233 (citations omitted).  *See also United States v. Harris*, 403 U.S. 573, 584-85 (1971) (The reliability that comes from knowing an informant's identity is not based on inclusion of their name in the affidavit, but rather on the fact that if he/she is lying he/she may be prosecuted under state laws for making a false statement to police.)  Furthermore, *Harris* concluded "[i]t will not do to say that warrants may not issue on uncorroborated hearsay."  *Id*. at 584.  Similarly, the Eighth Circuit has commented that "[t]he Supreme Court in part specifically adopted the flexible 'totality of the circumstances' test for probable cause so that, for example, an informant's clear basis of knowledge could be balanced against, rather than automatically overruled by, that

informant's lack of a 'track record' of reliability." *Reivich*, 793 F.2d at 959 (citing *Gates*, 462 U.S. 233-35).

The *Gates* majority summarized the totality of the circumstances test for probable cause as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

462 U.S. at 238.

In simple terms, the question to be answered in reviewing an issuing judge's authorization of a search warrant, is whether the judge had a "substantial basis for…conclud[ing]" that probable cause existed." *Id*. at 238, citing *Jones v. United States*, 362 U.S. at 271.  *See also Reivich*, 793 F.2d at 959 (citing *Gates*, 462 U.S. 246) ("Probable cause requires only a 'fair probability,' and not a certainty, that contraband will be found at the premises to be searched, and the affidavit here on its face provided a substantial basis for a conclusion that such a probability existed.").

The situation here involves an officer affiant and the judge who issued the Search Warrant relying solely on the "basis of knowledge" and detailed information provided by a *named* informant.  While the affiant officer believed that evidence of a crime would be found at Jones' residence based on the information provided by Moody, TFO Buchanan neither expressed her opinion as to the informant's reliability, nor recited any efforts that

were made to corroborate Moody's report.[1]  Similarly, the judge who issued the Search Warrant did not ask for additional information from the named informant; or inquire of TFO Buchanan's opinion as to the informant's reliability, or whether any of his information had been corroborated.  If such information had been included, it would have bolstered the probable cause finding.

It is true that "[a] person arrested in incriminating circumstances has a strong incentive to shift blame or downplay his role in comparison with that of others, in hopes of receiving a shorter sentence and leniency in exchange for cooperation."  *Williamson v. United States*, 512 U.S. 594, 607-08 (1994).  However, when the informant's statements include admission "to criminal activities beyond those of which the police already kn[o]w [the person] to be guilty [of,]" the statements "cannot be taken merely as blame-shifting."  *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001).  Furthermore, in *Reivich*, the Eighth Circuit agreed with the District of Columbia Circuit's recognition that "a person admitting crime risks disfavor with the prosecution if he lies to the police."  793 F.2d 957, 960 (8th Cir. 1986) (citing *United States v. Davis*, 617 F.2d 677, 693 (D.C.Cir. 1979) (quoting 1 W. LaFave, supra, § 3.3, at 528).

---

[1]  Neither party questioned TFO Buchanan about whether the investigating officers attempted to corroborate Moody's statement.  TFO Buchanan's testimony that the Search Warrant was not executed until Jones' presence at the residence was confirmed, however, supports that the officers corroborated Moody's report that Alonzo Jones resided at the target residence prior to applying for the Search Warrant.

As the Supreme Court recognized in *United States v. Harris*, 403 U.S. 573, 583-84 (1971), when an informant's information amounts to an admission that the informant has committed a crime, the admission carries its own indicia of reliability.

> Common sense in the important daily affairs of life would induce a prudent person and disinterested observer to credit these statements. People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility—sufficient at least to support a finding of probable cause to search. That the informant may be paid or promised a 'break' does not eliminate the residual risk and opprobrium of having admitted criminal conduct.

*See also United States v. Pennington*, 287 F.3d 739, 742 (8th Cir. 2002) (fact that an informant implicated himself in criminal activity to the police supports a finding of probable cause to search). Ultimately, an informant's admissions regarding involvement in recent and continued illicit activity has the effect of enhancing the informant's credibility and reliability rather than deflating it.

Here, Moody was an eyewitness. "An informant who alleges he is an 'eyewitness' to an actual crime perpetrated demonstrates sufficient 'reliability' of the person." *McCreary v. Sigler*, 406 F.2d 1964, 1969 (8th Cir. 1969) (probable cause found even under older, stricter *Aguilar-Spinelli* test.); *Draper v. United States*, 358 U.S. 307 (1959). As the Supreme Court concluded in *Gates*, "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234. *See also United States v.*

*Leppert*, 408 F.3d 1039, 1042 (8th Cir. 2005) (citations omitted) ("[W]e think that [the informant]'s statement that he helped to make the methamphetamine 'carr[ies] considerable weight' in supporting a finding of probable cause to search the location where he admitted to committing that crime.").

The inclusion of corroborating factors of even innocent details such as verification that 112 Ponderosa Drive, Steele, Missouri was Jones' residence, or that vehicles parked at the residence were registered in the names associated with the target of the search are customary practices. TFO Buchanan's belief that Moody was a reliable informant would also have made the affidavit stronger. The best practice would have been for TFO Buchanan to include such information in her Affidavit. Examining the totality of the circumstances, nevertheless, does not require that such factors be checked in every case.

Several circuits have held that statements from unproven informants "are so presumptively reliable that they may support a probable cause determination even if uncorroborated." *United States v. Brown*, 366 F.3d 456, 459-60 (7th Cir. 2004) (collecting cases). One of the collected cases is *United States v. Patterson*, wherein the Fourth Circuit held "it would be contradictory to allow a defendant to be convicted based on the uncorroborated testimony of his co-perpetrator while refusing to find that the same statement would be sufficient to support probable cause." 150 F.3d 382, 386 (4th Cir. 1998).

*Reivich* included two separate unproven informants who identified Reivich as their source of supply and the police affiant confirmed details related to a phone number provided by the informants and that a vehicle parked in front of the target residence was

registered to Reivich. In attacking the issuing judge's probable cause finding, the district court below and Reivich focused on their view that these indicia were not sufficient for a probable cause finding. The Eighth Circuit noted that such a focus represents the "'excessively technical dissection of informants' tips' and the 'judging [of] bits and pieces of information in isolation against * * * artificial standards' against which the Supreme Court cautioned in *Gates* and *Upton*." *Reivich*, 793 F.2d at 960.

*Reivich* affirmed the issuing judge's probable cause finding based on the following analysis:

> The police knew of the presence of drug traffic because they had found cocaine on [the two informants], and [the two informants] had firsthand knowledge of the identity of their own drug source and a tenuous incentive to lie since giving false information could have furthered their trouble with the police. These circumstances were set out in the affidavit with sufficient particularity that the judicial officer's decision to issue the warrant constituted an exercise of independent judgment and was not just a rubber-stamping of conclusory police statements. *See Gates*, 462 U.S. at 239. Granted that [the two informants] might not have qualified for an AAA rating on a Dun & Bradstreet credibility scale, not having been shown to be Certified Public Informants, their motivation to speak the truth (it being a reasonably safe assumption that self-preservation ranks higher than honor in a drug dealer's hierarchy of values) and their information concerning Reivich were sufficient to support a finding of probable cause.

*Id*.

The undersigned acknowledges that TFO Buchanan's affidavit did not include corroboration of the informant's information whereas the *Reivich* case included information about the police officer's efforts to corroborate the informants' statements. With that said, the overarching question is whether there was at least a "fair probability"

that items relating to the possession and distribution of controlled substances would be found within Jones' residence.

The undersigned concludes that probable cause existed to search Jones' residence based on:

1) the numerous admissions Moody made against his penal interest (*i.e.*, he intended to sell the methamphetamine that was found in his possession);

2) the fact that Moody's admissions went well beyond the illicit activities uncovered by law enforcement (*i.e.*, having been a user of methamphetamine for a decade);

3) the substantial number of times Moody admitted he had acquired methamphetamine from Jones *(i.e.*, having purchased methamphetamine from Jones at least thirty times during a three month time period, plus having received methamphetamine from Jones in exchange for performing mechanic work);

4) Moody's description about his knowledge of where and how Jones stored methamphetamine;

5) the fact that Moody identified an additional person by name as having acquired methamphetamine (seven ounces) from Jones in Moody's presence;

6) Moody's statement that during the evening of February 13, 2019, he observed Jones: a) obtain the seven ounces from an air freshener cannister that contained *an additional* estimated two ounces of methamphetamine, and b) possess a cigar box containing digital scales and *an additional* one to two ounces of methamphetamine; and

7) the fact that Moody subscribed to and swore to a Notary Public that the statement was his.

In addition, the timing of some of the unlawful activity that was reported was extremely recent, that being one day before the Search Warrant was secured and executed.

In consideration of the foregoing, Jones' Motion to Suppress Evidence for lack of probable cause should be denied as the issuing judge had a "substantial basis for…conclud[ing]" that probable cause existed." *Gates*, 462 U.S. at 238.

**II.B.  Good Faith**

While evidence obtained as the result of a potentially defective search warrant is generally inadmissible, there is an exception for evidence found by officers relying in objective good faith on a defective search warrant. *See Leon*, 468 U.S. at 920, 921. There are four circumstances under which the *Leon* good faith exception does not apply. They are as follows:

> . . .(1) the magistrate judge issuing the warrant was misled by statements made by the affiant that were false or made "in reckless disregard for the truth"; (2) "the issuing magistrate judge wholly abandoned his [or her] judicial role"; (3) the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) the warrant is "so facially deficient. . .that the executing officers cannot reasonably presume it to be valid."

*United States v. Guzman*, 507 F.3d 681, 685 (8th Cir. 2007).  *See also Leon*, 468 U.S. 897 at 832.

Based on the above, the undersigned concludes that even if the Search Warrant was invalid, the good faith exception would apply in this case.  First, Jones does not allege that any statements in the affidavit misled the issuing judge.  Jones claims that Moody's statement was unreliable by alleging that Moody was under the influence of drugs when he signed his Affidavit.  The record does not support that allegation.  (Tr. 11, 21, 48, 51-52.)  Jones does not allege that the issuing judge wholly abandoned his judicial

role or that the Search Warrant was facially deficient. The undersigned has ultimately found that the Search Warrant was not lacking in probable cause.

Considering the information contained in the entire Affidavit, it was reasonable for both TFO Buchanan and the issuing judge to believe that the evidence sought would be found in Jones' residence. As such, the Search Warrant and Application were also sufficient under *Leon* standards.

### II.C.   Statements not fruit of the poisonous tree

Jones also requests suppression of the statements he made following the execution of the search warrant as fruit of the poisonous tree. "[T]he exclusionary rule reaches not only primary evidence obtained as a direct result of an illegal search or seizure, but also evidence later discovered and found to be derivative of an illegality or 'fruit of the poisonous tree.'" *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir. 2011), quoting *Segura v. United States*, 468 U.S. 796, 804 (1984). "[T]he defendant bears the initial burden of establishing the factual nexus between the constitutional violation and the challenged evidence." *United States v. Marasco*, 487 F.3d 543, 547 (8th Cir. 2007).

In this case, because the search of Jones' residence was pursuant to the execution of a valid Search Warrant, the statements he later made to law enforcement officers do not constitute fruit of the poisonous tree. *See United States v. Goodale*, 738 F.3d 917, 922 (8th Cir. 2013).

For the foregoing reasons, Jones' Motion to Suppress Evidence and Statements should be denied.

### III.  Conclusion

In accordance with the Memorandum above,

**IT IS HEREBY RECOMMENDED** that the Motion to Suppress Evidence and Statements Obtained as a Result of Search or Seizure (Doc. 24) be **denied**.

Further, the parties are advised that they have fourteen days, or not later than December 3, 2019, within which to file written objections to this Report and Recommendation, unless an extension of time for good cause is obtained.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).

                                            s/Abbie Crites-Leoni
                                            ABBIE CRITES-LEONI
                                            UNITED STATES MAGISTRATE JUDGE

Dated this 19th day of November, 2019.